IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LEORA SALO** § | | |
| Plaintiff § | Civ. No. 4:20-cv- | |
| § | | |
| vs § | | |
| § | **Jury Demanded** | |
| **HOUSTON COMMUNITY COLLEGE** § | | |
| Defendants § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff, Leora Salo, complaining of Houston Community College shows:

### I. PRELIMINARY STATEMENT

1. This lawsuit seeks damages from Houston Community College for violations of the Americans with Disabilities Act. Plaintiff alleges that she was discriminated against and harassed, because she is disabled or perceived to be disabled. When she complained about the harassment, Houston Community College retaliated against her by refusing to offer her an accommodation. Plaintiff resigned her position under conditions that would constitute a constructive discharge.

### II. JURISDICTION

2. This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. §1331 (federal question) because Plaintiff is bringing these claims pursuant to the Americans With Disabilities Act as amended 42 U.S.C § 12101 *et. seq*.).

### III. VENUE

3. Venue is proper in the United States District Court for the Southern District of

Texas under 28 U.S.C. § 1391(b) as the defendant resides in this district and a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

### III.
### PARTIES

4. Plaintiff Leora Salo is an individual residing in Houston, Texas.

5. Defendant, Houston Community College is a government entity as defined by Tex. Gov. Code section 554.001. Service can be effectuated by serving its Chancellor, Dr. Cesar Maldonado, 3100 Main Street Houston, Texas 77002.

### IV.
### FACTUAL ALLEGATIONS

6. Salo began working for Houston Community College ("HCC") as an adjunct professor in the Music Business and Technology Department September 2016.

7. In June 2017, she joined the faculty as Program Director of the Occupational Therapy (OT) Department of HCC Coleman College for Health Sciences. In this position, she reported to Jeff Gricar, Dean of Health Sciences.

8. After accepting the position, Salo learned that she would need to facilitate the department's accreditation.

9. Salo had been diagnosed with Lyme's disease in December 2015. Secondary to that diagnosis she developed fibromyalgia, and autoimmune deficiency, brain lesions, spinal degeneration, and autonomic dysfunction.

10. In July 2017, Salo told Shana Tatum, office manager for Gricar that she was filling out the paperwork to request an ergonomic chair and some special equipment as an accommodation for her disabilities. Tatum told her not to complete the paperwork as it would result in a "blackmark" against her.

11.     In July 2018, Salo's office was scheduled to move to another location at the Coleman Campus.  At that time Salo's doctor had restricted her from lifting in excess of 5 lbs.  Salo completed the necessary paperwork to request an accommodation in connection with moving offices.  She submitted the paperwork to Dean Gricar, who assigned Tatum and Rene Nelson Moore, Administrative Assistant to Dean Gricar to assist her with the move; however, when Salo emailed them asking for help she got no response.  As a result, Salo had to contact Sandra Roman Facilities Manager], and Roman sent two people to help pack and move her office.  Months later, Salo learned that her ADA paperwork, including her request for an accommodation had not been completed by Gricar' s office and that her paperwork had never reached HCC's ADA office.

12.     In July 2018, during the time of the office relocation, Tatum referred to Salo derogatorily as "trouble" in front of HCC employees, including Sandra Roman.  Tatum and Moore openly discussed program directors (Salo) as "lazy" in Gricar office.  Salo informed Gricar of the name calling but after the meeting with Gricar, the hostility from Tatum increased.

13.     Tatum would refuse to acknowledge Salo in front of others, at times failed to provide her with information needed to perform the Program Director functions and reportedly refused to respond to Salo's emails.  These behaviors were reported to Gricar, who said that as Program Director Salo "needed to take the higher road;" however, Tatum's refusal to respond to emails or perform necessary tasks for the OT department hindered Salo's ability to perform her job duties.

14.     Because of the failure of Gricar to take any action, Salo contacted Alix Alvarado in Talent Engagement and the Office of Institutional Equity about the escalating situation to inquire about their intervention and strategies for reduction of workplace bullying.

15.     A week or two after the move in July 2018, Salo collapsed in the ladies' room at HCC.  Salo texted Tatum to ask her to contact Donna Spivey, Dean of Nursing, who was covering

during Gricar's absence, that she needed help.  When Tatum did not respond, Salo contacted Sandra Roman and asked her for help.  Roman sent Donna Spivey, and Spivey called the paramedics.  Tatum never responded to Salo's request for assistance.

16. When Gricar returned from vacation, Salo met with him and again told him about Tatum not helping her with the move as he had instructed, calling her names and not responding when she had collapsed.

17. Salo went to the doctor in August or September 2018 because of her collapse.  Salo told her doctor about working 6 days a week, 10-12 hours a day on the accreditation for the department. Her doctor completed the paperwork requesting as an accommodation that Salo's workweek be limited to 40 hours a week during a 5-day work week.

18. After Salo completed the ADA paperwork, she met with Thomas Anderson, Director of Human Resources about the request for the accommodation.  During the meeting Anderson called Gricar to discuss the accommodation.  Gricar told Anderson he refused to accommodate the request to limit Salo's hours to a 40 hour/ 5-day workweek.  Instead, Anderson suggested that Salo come to work as usual and when she went home to rest for a while and then work additional hours from home.

19. After the phone conversation, Anderson told Salo that HCC would not grant the accommodation, but he did not suggest any alternatives.  Anderson told Salo, "I've seen a lot of disabled people and you don't look disabled to me."

20. During the first week in October, Salo met with Gricar to discuss the status of the accreditation.  During that meeting Gricar told Salo that she would be the scapegoat if anything went wrong with the department's pending accreditation.  When Salo told Gricar that she worked best in environments that problem solve and that she was not cut out to be a scapegoat, he responded, "I don't care if you stay or leave."

*Salo v. HCC*  4
Original Complaint

21. Salo was able to successfully complete the department's accreditation and the department was awarded a relatively rare 7-year status. During a critical meeting with the members of the onsite national accreditation team, Tatum repeatedly and disruptively emailed Salo on a topic unrelated to accreditation - i.e. Tatum's failure to accurately enter the department's classes to the summer schedule. After the onsite accreditation team departed, Gricar went to Salo's office and began yelling at her in front of staff and faculty for "insubordination" to Tatum (who was not Salo's superior). When Salo reminded Gricar of her repeated attempts to address the bullying treatment she was receiving from his staff, he again stated, "I don't care if you stay or go!"

22. The cumulative stress of the many extra hours, weeks, months of up to 14 hour days and 6-day working combined with the humiliation of being yelled at by her employer in front of her staff exacerbated Salo's medical condition and required her to take FMLA leave to address health concerns.

23. While on leave, Salo came to the conclusion that no reasonable person would work under the conditions she was being required to work. Salo resigned from the position as program director of the Occupational Therapy Assistance Department on February 28, 2019 effective March 15, 2019.

## V.
## CAUSE OF ACTION

A. *Americans With Disabilities Act*

24. Salo is disabled under the definition of "disability" contained in the Americans with Disabilities Act. HCC repeatedly refused to accommodate Salo's disability and when she complained she was retaliated against by her supervisor. HCC's refusal to accommodate Salo resulted in her resigning under conditions that would constitute a constructive discharge.

# VI.
# **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Leora Salo prays that Defendant be cited to appear and that on final trial of this matter that the Court award her:

a. Reinstatement with restoration of seniority;

b. lost wages and benefits from March 8, 2019 to the date of judgment less any earnings in the interim;

c. compensatory damages in an amount not to exceed $300,000;

d. attorney fees;

e. pre-judgment interest and post-judgment interest on all such sums;

f. costs of court; and

g. all other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

By: */s/ Linda D. King*
Linda D. King
**GORANSONKING, PLLC**
State Bar No. 11455600
So. Dist. NO. 6060
1415 N. Loop W., Suite 1100
Houston, Texas 77008
Phone: (713) 526-9200
Fax: (713) 526-9202
king@goransonking.com

**ATTORNEYS FOR PLAINTIFF LEORA SALO**